**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**MARIA GUADALUPE ARVIZU-GARCIA, et al.**                    **PLAINTIFFS**

**VERSUS**                              **CIVIL ACTION NO. 2:14cv199-KS-MTP**

**STATE OF MISSISSIPPI, et al.**                              **DEFENDANTS**

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PROTECTIVE ORDER**

Plaintiffs, **MARIA GUADALUPE ARVIZU-GARCIA, et al.**, by and through Counsel of Record, submit the following Memorandum in Support of their Motion for Protective Order based on the hardship that would result from the Defendants' proposed deposition location and, in support thereof, state as follows:

**INTRODUCTION**

The instant matter involves the wrongful death of the father of these Plaintiffs caused by the negligence of Highway Patrolman Jameka Moore and the Mississippi Department of Public Safety. As a result of the Defendants' grossly negligent conduct, the Plaintiffs herein have forever been deprived of the presence of their father and all accompanying services, affection, and financial support.

On December 3, 2012, the Plaintiffs' father, Miguel Nieves, was walking across a road in Quitman, Mississippi. As he was crossing the road, Defendant Jameka Moore was speeding down the same road while not paying attention to what lay ahead. As a result, Defendant Moore struck Mr. Nieves at such an excessive speed that it caused the severing and amputation of Mr. Nieves' leg and left Mr. Nieves to suffer before dying on the road.

The Plaintiff Children in this matter are represented by Counsel in Mississippi as well as Counsel in California, Lazaro Salazar Law, Inc. On August 6, 2015, Undersigned Counsel for the Plaintiffs contacted, through e-mail, Counsel for the Defendants in the hopes of getting information for an officer who was present on the night of the collision and who likely has discoverable information regarding the collision. Counsel for the Defendants responded by stating the number for said officer was not known to Counsel but then included a statement requesting dates for the depositions of the Plaintiffs in Counsel for the Plaintiffs office in Jackson, Mississippi. *See* August 6, 2015 E-mail Correspondence attached hereto as Exhibit "A." Thereafter, Counsel for the Plaintiffs relayed the message that the Plaintiffs' deposition would be preferable to occur in CA. *See* August 7, 2015 Email Correspondence attached hereto as Exhibit "B." On August 11, 2015, Counsel for the Defendants responded with a letter rejecting the Plaintiffs' offer to videoconference the depositions from California at the Associated Counsel's office. *See* August 11, 2015 Correspondence attached hereto as Exhibit "C." On August 13, 2015, Counsel for the Plaintiffs again contacted Counsel for the Defendants offering yet another possible location and method for the deposition through having Counsel Salazar travel to Mexico to establish videoconference communications for the Plaintiffs' depositions (which would be advantageous for all parties involved). *See* August 13, 2015 Correspondence attached hereto as Exhibit "D." Thereafter, Counsel for the Defendants responded to the August 13, 2015 letter sent by Plaintiffs' Counsel stating opposition to the Plaintiffs' suggestions and noting that such response should serve as execution of good faith certificate. *See* Response attached hereto as Exhibit "E."

As explained in greater detail below and with supporting authority, the Plaintiffs hereby respectfully request, pursuant to this Court's inherent discretion to protect a party from hardship under Fed. R. Civ. P. 26(c), that they be excused from the burdensome call by the Defendants that they be forced to travel to Mississippi for depositions knowing that some may not be able to get a

2

visa to travel and a financial burden for the others.  This is not a "typical" matter involving a plaintiff residing in another state who wishes to avoid having to drive or catch a quick flight to Jackson for a deposition.  This unique matter involves six (6) Plaintiffs who: 1. do not speak English; 2. Either reside in Mexico or are in America with work visas with restrictions on travel within the country; 3. do not possess the means to easily travel to Mississippi, 4. have no personal knowledge (or little to no knowledge) of the events determining liability in this action; and 5. are individual plaintiffs rather than a corporation or business with large resources.  It must also be noted that three of these Plaintiffs have no visa to enter the United States and would essentially be forced to attempt to obtain the visas in the limited time frame before the expiration of the discovery deadline, which would be virtually impossible.  Further, the remaining three Plaintiffs have work permit visas and are, at the moment, located in Ohio and, because they have work permit visas, are restricted in their travels to the locations of their employment.  Such a needless demand, meant to cause the Plaintiffs to drop their claims, will impose unnecessary hardship, both physically and psychologically, on the Plaintiffs in addition to causing them severe financial adversity.  Such hardship is especially evident since the same result can be accomplished by conducting the depositions through videoconferencing or written interrogatories which will allow the Defendants their opportunity, in both methods, to adequately depose the Plaintiffs and will spare the Plaintiffs the expense and hardship of traveling to the United States for depositions <u>which are not anticipated to exceed 4.5 hours</u> for all six Plaintiffs combined.  *See* Notice to Take Plaintiffs' Depositions attached hereto as Exhibit "F."

## **ARGUMENT**

As stated in Fed. R. Civ. P. 26(c)(1):

> [a] party or any person from whom discovery is sought may move for a protective order in the court where the action is pending . . . The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. **The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment,**

> **oppression, or undue burden or expense** . . . [which may include] specifying terms, including time and place or the allocation of expenses, for the disclosure of discovery [or] prescribing a discovery method other than the one selected by the party seeking discovery.

(emphasis added). As shown above, the Plaintiffs, through Counsel, have conferred with Counsel Opposite in order to obtain a location and method for the depositions that would be less burdensome and obstructive to the Plaintiffs as they are Mexican citizens and reside in Mexico. However, Defendants continually refuse to allow for any other location outside of Mississippi. *See* Exhibits "C," "D," and "E."

Rule 26 additionally allows for this Court to "issue an order" protecting the Plaintiffs from oppression, undue burden, or expense as long as good cause is shown by the Plaintiffs. Good cause necessarily "requires the movant to show the necessity of the issuance with a specific demonstration of fact rather than mere conclusory statements." *Resolution Trust Corp. v. Worldwide Ins. Mgmt. Corp.*, 147 F.R.D. 125, 127 (N.D. Tex. 1992) aff'd sub nom. *Resolution Trust v. Worldwide*, 992 F.2d 325 (5th Cir. 1993).

Further, the Plaintiffs do not disagree with the Defendants' position that "[a] plaintiff should ordinarily be deposed in the forum in which he has chosen to sue." *Caraway v. Chesapeake Exploration LLC*, 269 F.R.D. 627, 628 (E.D. Tex. 2010) (emphasis added). However, the Plaintiffs stress that (by its very language) the rule governing location and method of depositions is not mandatory for all depositions and is, instead, able to be relaxed on an *ad hoc* basis. In fact, "a specific showing of hardship tied to an individual's circumstances" is enough to overcome the ordinary presumption that a deposition should be conducted in the forum of the suit. *Id.* These Courts also hold that there are any number of "factors to determine a means of deposing [the Plaintiffs] that would be the most convenient and cost-effective for all parties involved. *Id.* (emphasis added). Such a determination involves weighing "the party's preference to depose at the forum against (1) the actual need for oral

4

examination at the forum, and (2) the resulting burden to the opponent." *Xavier v. Belfor USA Grp., Inc.*, 2009 WL 3231547, at *5 (E.D. La. Oct. 2, 2009).

First addressing good cause, the Plaintiffs in this matter all reside in Mexico and range in age from 22 through 31. They are: Maria Guadalupe Arvizu-Garcia, Maria Del Carmen Arvizu-Garcia, Noel Miguel Arvizu-Garcia, Miguel Arvizu-Garcia, Adan Arvizu-Garcia, and Maria Arvizu-Garcia. In fact, only three of these Plaintiffs even possess the ability (through work permit visa) to timely enter the United States for the depositions which must occur before the end of October in order for the parties to comply with this Court's discovery deadline.

Maria Guadalupe Arvizu-Garcia, Maria Del Carmen Arvizu-Garcia, and Maria Arvizu-Garcia all permanently reside in Mexico and do not have visas which allow them entry into the United States. Further, if they were required to obtain said visas, the process would likely take longer than the time remaining before this Court's discovery deadline expires, if they were even able to obtain the visas at all. These three (3) Plaintiffs would be required to interview, apply, and wait for approval of their visa – for one limited deposition in Mississippi. According to the United States' State Department website, the process for obtaining a visa requires a potential sixty (60) day waiting period, a fee of one hundred and sixty dollars ($160), an interview to determine where exactly the applicant wishes to travel in addition to an accounting of the funds required to make the complete trip, etc. The Plaintiffs should not be forced to endure this time consuming and expensive process to satisfy the Defendants' desire for an in-person deposition.

As for Noel Miguel Arvizu-Garcia, Miguel Arvizu-Garcia, and Adan Arvizu-Garcia, they have work permit visas and currently are located in Ohio but are clearly in this country for the sole purpose of employment. Forcing them to leave their respective locations for a deposition would be equally difficult and burdensome, especially since they will be required to spend resources to get to Mississippi in addition to losing resources as a result of their absence from employment. In

addition, work permit visas expire after a certain amount of time, leaving these three Plaintiffs the possibility of not even being in the United States at the time of the proposed depositions.

Even if the Plaintiffs' ability to travel to Mississippi was somehow possible by the time of the depositions, it will undoubtedly cost several thousand dollars for the Plaintiffs if they were to travel from Mexico. Further, the Defendants decline to consider the fact that the value of the United States dollar is far higher than the Mexican peso, e.g., $2,600.00 U.S. dollars amounts to roughly 43,000 Mexican pesos. This guarantees that the several thousand dollars the Plaintiffs must spend to be deposed in Jackson will cost far more in Mexican currency. This is made even more of a financial hardship when one considers the fact that the average annual disposable income for a Mexican citizen amounts to only roughly $13,085 in United States dollars. *See* OECD Report on Annual Disposable Income attached hereto as Exhibit "G."

Further, this Court may be aware of the economic impact Mr. Nieves had on the lives of his children, these Plaintiffs. On a regular basis, Mr. Nieves would financially support his children in order to assist with their well-being in Mexico while he worked in the United States. In fact, they greatly relied on the contributions made by their father, as their mother passed away in 2002, leaving them with one parent to support them. Thus, these Plaintiffs were not completely financially independent at the time of their father's death nor are they currently financially secure such that they are able to spend great resources (airfare, lodging, food/drink, etc.) to travel to the United States for intrinsically limited depositions. This is amplified by the fact that the several thousand dollars required to travel to the United States represents a much larger portion of the Plaintiffs' annual income in Mexico than it would for someone living in the United States. This Court should also take into consideration the fact that these Plaintiffs do not speak English and only some of them have never been to the United States.

Therefore, the Plaintiffs seek relief from this Court in the form of a mandate that the location of the deposition be in Mexico at the United States Embassy or at the Foreign Ministry in Mexico, either of which would be fully competent to handle the deposition and all technology necessary to conduct it.  Another method proposed by the Plaintiffs is that the Defendants utilize written interrogatories to depose the Plaintiffs since the Plaintiffs are scattered throughout two (2) separate countries.  To require the depositions to be had in Mississippi when three of Plaintiffs permanently reside in Mexico, three of the Plaintiffs' travel throughout the United States on work permit visas, all of the Plaintiffs lack the financial stability to afford the trip, and none of the Plaintiffs speak English, would undoubtedly be an extreme hardship on the Plaintiffs and would allow the Defendants to obtain no more information than they would have, should these depositions occur in Mexico or through written interrogatories.

Counsel for the Defendant sets forth a district court case from the Northern District of Mississippi wherein that court categorizes the plaintiff being required to travel to the forum of the suit as a "normal rule." *See* Exhibit "D."  Clearly, the rule is not applicable in all cases and is susceptible to this Court's discretion when all of the factors (including convenience and cost-effectiveness "<u>for all parties involved</u>") are taken into consideration. *Caraway v. Chesapeake Exploration LLC*, 269 F.R.D. at 628 (emphasis added).  Therefore, contrary to the Defendants' implied position that it is their right alone to choose the location of the deposition and their costs alone that underlie the Court's decision, the Court should take into consideration <u>all</u> parties' costs and levels of convenience. *See* Exhibit "D" at ¶ 2.

Additionally, the Plaintiffs were not present at the scene of the collision and, therefore, do not have firsthand knowledge of its cause or the Defendants' actions thereafter.  It follows that the Defendants will likely elicit minimal information regarding liability during their depositions, other than what the Defendants are already aware of and have already provided to the Plaintiffs through

7

discovery thus far.  Therefore, the Defendants will realistically be limited (simply by virtue of the Plaintiffs' distance from the collision and lack of communication with the Defendants or their agents thereafter) to information almost totally comprised of the damages aspect rather than both liability and damages (i.e., what financial support their father sent to them, what emotional support their father provided them with, and other assistance their father provided while home).  With this inherently confined scope of questioning comes the inevitable limitation on the length of these depositions.  Certainly, as much as six (6) airline flights into a foreign country for depositions which (combined) have the potential to last no longer than <u>one afternoon</u> is certainly neither convenient nor cost-effective and will undoubtedly impose severe hardship on the Plaintiffs.  Their lack of knowledge regarding the underlying collision will absolutely, and drastically, limit the length of the depositions and will make it that much more burdensome and unnecessary for the Plaintiffs to enter into another country for information that could easily be obtained through videoconferencing or written interrogatories.  Should this Court require more evidence of the extremely limited scope of these depositions and the hardship it will impose on the Plaintiffs, the Plaintiffs will simply point to the Notice to take the Plaintiffs' Depositions [50] which was filed by the Defendants on August 17, 2015. *See* Exhibit "F."  Astoundingly, the Defendants demand the Plaintiffs to travel (some of them internationally) to Mississippi for six depositions which, by the Defendants' own calculations, <u>will last no longer than four and one-half (4.5) hours.</u> *See* Exhibit "F."

      The Defendants also claim that they would like to exercise "their right to face to face depositions." *See* Exhibit "D" at ¶ 2.  Of course technology has advanced greatly to the point where a party can be deposed "face to face" even if the deponent is located a great distance from the deposing party.  As stated by Counsel for the Plaintiffs in the most recent correspondence to the Defendants, videoconferencing equipment is available at the foreign ministry office in Mexico as well as the United States Embassy in Mexico. *See* Exhibit "D."  Such equipment will allow the

Defendants and their Counsel the opportunity of a live feed of both audio and video which allows both sides to essentially be in the same room. Moreover, having the Plaintiffs deposition occur through videoconference will not disrupt, limit, or otherwise harm the Defendants' anticipated line of questioning to the Plaintiffs since both the questions and answers will need to be filtered through a translator regardless of the location. Furthermore, this method entitles both sides to a huge respite from unnecessary and potentially exorbitant expenses as the Defendants would not be required to expend the State's money to travel to California and the Plaintiffs would not be required to travel to Mississippi for six depositions in a span of 4.5 hours.

In light of the above, the Defendants could just as easily acquire all sought-after relevant information by deposing the Plaintiffs through videoconferencing or written interrogatories as they would through in-person depositions. Regardless of the Defendants' strategic benefit by forcing the Plaintiffs to travel to Mississippi, the fact remains that the decision of the location of the depositions lies within the discretion of this Court after reviewing the specific facts which support the Plaintiffs' case for hardship arising from the Defendants' demand. The Plaintiffs stress that they are not corporations or businesses normally covered by decisions requiring other plaintiffs to travel to the location of the forum of suit for depositions. Rather, they are six individual plaintiffs whose earnings do not support or justify travel to the United States for short and limited depositions; the Plaintiffs' position would be the same even if the length and scope of the depositions were not inherently limited. All of the objectives of the Defendants could easily be accomplished through videoconferencing or interrogatories, which negates the need of the Defendants to depose these Plaintiffs in Mississippi. *Xavier v. Belfor USA Grp., Inc.*, 2009 WL 3231547, at *5. And as explained above, the burden on these Plaintiffs would be severe if they were forced to engage in international travel simply to satisfy Defendants' desire to depose them "in person." *Id.*

Should this Court allow the depositions to be conducted without requiring the Plaintiffs to travel to Mississippi, the Plaintiffs would not object to any reasonable means of deposition including, but not limited to, written interrogatories, Skype, or any reliable videoconferencing methods. Further, as the depositions are the result of a request by the Defendants, the Plaintiffs reasonably expect the Defendants to cover the expenses associated with them, such as the interpreter and the court reporter (i.e., expenses they would have incurred regardless of the location allowed by this Court). However, the Plaintiffs will make available for the Defendants undersigned Counsel's conference room in Jackson, Mississippi as the Defendants were originally seeking to travel there.

Alternatively, the Plaintiffs request this Court postpone the depositions of the Plaintiffs until after liability has been determined. Undersigned is well aware of this Court's scheduling order in this matter and wishes to abide by it as much as possible. However, as the Plaintiffs have little to no knowledge of the underlying circumstances leading to their father's death, depositions at this stage (for the purposes of determining damages) would be possibly pointless if a jury decides no liability is to be awarded.

## **CONCLUSION**

Since the Plaintiffs satisfy this Court's requirement for good cause which allows relief under Fed. R. Civ. P. 26(c), the Plaintiffs respectfully request they be excused from the requirement of having to travel to Mississippi for costly and burdensome depositions which will likely elicit information mostly concerning damages. Further, the hardship which will undoubtedly be endured by these Plaintiffs for having to travel does not take into account the convenience and cost-effectiveness for all parties involved. The Plaintiffs therefore request this Court allow them to be deposed via videoconferencing at a location sufficient to support a deposition in Mexico or allow them to be deposed via written interrogatories. Alternatively, the Plaintiffs request that this Court

postpone the depositions of the Plaintiffs until after liability has been determined in this matter since the knowledge they possess regarding their father's death, and the Defendants' actions attributing thereto, is minimal at best.

      **THIS** the 18th day of August, 2015

                        Respectfully submitted,
                        **MARIA GUADALUPE ARVIZU-GARCIA, et al.,**
                        Plaintiffs
                        BY: /s/ *Christopher A. Bambach*
                              CHRISTOPHER A. BAMBACH, MSB #104838

CHUCK McRAE, MSB #2804
SETH C. LITTLE, MSB #102890
CHRISTOPHER A. BAMBACH, MSB #104838
McRAE LAW FIRM, PLLC
416 EAST AMITE STREET
JACKSON, MISSISSIPPI 39201
Office: 601.944.1008
Facsimile: 866.236.7731
Email: chuck@mcraelaw.net
       seth@mcraelaw.net
       christopher@mcraelaw.net

Of Counsel:

Lazaro Salazar , Esq., admitted *Pro Hac Vice*
Lazaro Salazar Law, Inc.
252 N. Fulton Street
Frenso, CA 93701
Email: lazaro@salazarcooklaw.com

**CERTIFICATE OF SERVICE**

I, Christopher A. Bambach, hereby certify that I have this day filed a true and correct copy of the above and foregoing with this Court's electronic filing system which automatically sends notification to all counsel of record.

**THIS** the 18th day of August, 2015

/s/ *Christopher A. Bambach*<br>CHRISTOPHER A. BAMBACH, MSB #104838

CHUCK McRAE, MSB #2804
SETH C. LITTLE, MSB #102890
CHRISTOPHER A. BAMBACH, MSB #104838
McRAE LAW FIRM, PLLC
416 EAST AMITE STREET
JACKSON, MISSISSIPPI 39201
Office: 601.944.1008
Facsimile: 866.236.7731
Email: chuck@mcraelaw.net
 seth@mcraelaw.net
 christopher@mcraelaw.net

Of Counsel:

Lazaro Salazar , Esq., admitted *Pro Hac Vice*
Lazaro Salazar Law, Inc.
252 N. Fulton Street
Frenso, CA 93701
Email: lazaro@salazarcooklaw.com